**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Taylor-Wharton International LLC, et al., | ) | Case No. 09-14089 (BLS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| Taylor-Wharton International LLC, et al., | ) | Adversary Proceeding No. 10-52792 |
| | ) | |
| Plaintiffs, | ) | Related to Adv. Docket Nos. 1, 10, 11, |
| | ) | 13, 16, 17, 18, 27, 31, and 36 |
| v. | ) | |
| | ) | |
| Winford Charles Blasingame, Sandra Blasingame, Harry Franklin Brook, Terri Linn Brook, and Harsco Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Kathleen A. Murphy
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

Jeanne S. Lofgren
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222

J. Andrew Rahl, Jr.
Mark D. Silverschotz
Han J. Ahn
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022

*Counsel for Reorganized Debtors*

Brett D. Fallon
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899

Howard P. Walthall
Marc P. Solomon
Burr & Forman LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, AL 35203

*Counsel for Winford Charles Blasingame, Sandra Blasingame, Harry Franklin Brook, and Terri Linn Brook*

Etta R. Wolfe
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801

Charles M. Oellermann
Jones Day
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215

*Counsel for Harsco Corporation*

# **OPINION**[1]

Before the Court are two motions to dismiss (the "Motions") [Adv. Docket Nos. 10 and 13] filed by Winford Charles Blasingame, Sandra Blasingame, Harry Franklin Brook, and Terri Linn Brook (collectively, the "Blasingame Plaintiffs") and by Harsco Corporation ("Harsco") seeking the dismissal of the complaint (the "Complaint") [Adv. Docket No. 1] filed by Taylor-Wharton International LLC et al. ("Taylor-Wharton" or the "Debtors"). By their Motions, the Blasingame Plaintiffs and Harsco seek dismissal of the Complaint for failure of the Debtors to state a claim upon which relief may be granted as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012. For the following reasons, the Court will grant the Motions.

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. <u>BACKGROUND</u>

On November 19, 2009 (the "Petition Date"), Taylor-Wharton and various of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  The Court issued an order (the "Confirmation Order") confirming the Debtors' Amended Joint Plan of Reorganization (the "Plan") on May 26, 2010, and the Plan became effective on June 15, 2010 (the "Effective Date").

Prior to the Petition Date, Taylor-Wharton and Harsco entered into a purchase agreement (the "Purchase Agreement") whereby Taylor-Wharton purchased substantially all of the assets of Harsco relating to its gas services businesses.  Pursuant to Section 2.4 of the Purchase Agreement, Taylor-Wharton assumed all liabilities relating to accidents occurring after the closing date on the Purchase Agreement caused by products manufactured by Harsco (the "Assumption of Liability Provision").  On June 7, 2010, the Court authorized (the "Rejection Order") the Debtors to reject certain executory contracts, including the Purchase Agreement.

On March 2, 2009, the Blasingame Plaintiffs commenced a lawsuit against Sherwood Valve LLC ("Sherwood"), one of the named Debtors, in the United States District Court for the Northern District of Alabama (the "Alabama District Court").  In their complaint, the Blasingame Plaintiffs alleged damages based upon Sherwood's negligence and wantonness for failure to warn and for the defective design, manufacture, and sale of an unloading adapter manufactured by Harsco that was involved in a 2008 propane explosion.  Although discovery had been ongoing, the day after the Petition Date, the Alabama District Court dismissed the Blasingame Plaintiffs' claims against Sherwood, but without prejudice to the Blasingame

Plaintiffs' right to petition for reinstatement of any claims not adjudicated in this Court during the pendency of the Debtors' bankruptcy case.

Pursuant to Paragraph 16(b) of the Confirmation Order (which provision the Blasingame Plaintiffs expressly negotiated for in order to resolve their confirmation objection), the Blasingame Plaintiffs were permitted to petition to reinstate their claims against Sherwood in the Alabama District Court, liquidate any "potentially insured claims" as defined under the Plan,[2] and recover appropriate distributions under the Plan as general unsecured creditors or payments under an applicable insurance policy as provided under Section 11.3 of the Plan.

Accordingly, on July 14, 2010, the Blasingame Plaintiffs filed their petition for reinstatement with the Alabama District Court. Sherwood opposed the petition on the ground that the sole basis for its legal responsibility to the Blasingame Plaintiffs is the Purchase Agreement that the Debtors had already rejected.

Shortly thereafter, the Debtors filed the Complaint. In their Complaint, the Debtors assert, inter alia, that the Rejection Order excuses the Debtors' obligations under the Assumption of Liability Provisions in the Purchase Agreement, and that the Blasingame Plaintiffs' allowed "potentially insured claims" under the Plan are limited to claims independent of these provisions.

By their Motions, the Blasingame Plaintiffs and Harsco seek an order dismissing the Complaint based on the ground that the Debtors have failed to state a claim upon which relief may be granted. This matter has been fully briefed and argued, and it is ripe for decision.

---

[2] The Plan defines a "potentially insured claim" as "a Claim against a Debtor or Debtors that was or could have been asserted in, and is therefore subject to discharge in, the Debtors' Reorganization Cases and that is alleged to be covered, in whole or in part, by an Insurance Policy." Plan art. I(1.2).

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. § 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. STANDARD OF REVIEW

The Blasingame Plaintiffs and Harsco jointly seek dismissal of the Debtors' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A court's fundamental inquiry in the Rule 12(b)(6) context is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

In deciding a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). In addition, all reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183.

Following the Supreme Court's recent rulings on Rule 12(b)(6) in Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Third Circuit recognized that reviewing a Rule 12(b)(6) motion requires a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts

and disregarding the legal conclusions. Id. at 210-11. Second, a court should determine whether the remaining well-pleaded facts sufficiently show that the plaintiff "has a plausible claim for relief." Id. at 211 (internal quotations omitted). Put another way, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S. Ct. at 1949 (internal citations and quotations omitted). Federal Rule of Civil Procedure 8 also requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). These standards govern the Motion.

## IV. DISCUSSION

Section 365 of the Bankruptcy Code gives debtors and debtors-in-possession the right to assume or reject contracts that are executory as of the date of the bankruptcy petition. See 11 U.S.C. § 362(a)(3), (a)(6). An executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Sharon Steel Corp v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989), citing V. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973). Section 365 further provides that "the rejection of an executory contract . . . of the debtor constitutes a breach of such contract," 11 U.S.C. § 365(g), not the rescission of the contract.

An executory contract must be assumed or rejected in its entirety. Sharon Steel, 872 F.2d at 41. A party may not pick and choose among elements of a contract to assume or reject. In re Exide Techs., 340 B.R. 222, 228 (Bankr. D. Del. 2006) (citing Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.), 284 B.R. 541 (Bankr. D. Del. 2002), aff'd, 303 B.R. 574 (D. Del. 2003)) ("Correspondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract."). However, "[r]ejection relieves the estate of the debtor's remaining obligations under the contract." 3 Collier on Bankruptcy ¶ 365.03[1] (15th ed. rev.) citing Treister, et al., Fundamentals of Bankruptcy Law, § 5.04(f), at 249 (5th ed.2004, Richard Levin ed.). Thus the effect of rejection is to relieve a debtor from future performance under the contract; rejection does not undo past performance under the contract. Consequently, to the extent that both or either of the parties have performed under the executory contract, the debtor's rejection has no effect on such performance.

The Court finds that Section 2.4 of the Purchase Agreement, pursuant to which Taylor-Wharton assumed all liabilities relating to accidents occurring after the closing date on the Purchase Agreement caused by products manufactured by Harsco, is not among the executory provisions of the Purchase Agreement. Upon closing, Taylor-Wharton's assumption of such liabilities was complete and it owed no ongoing obligations to Harsco as to this aspect of the Purchase Agreement. Moreover, upon closing, the Assumption of Liability Provision provided any plaintiffs seeking recovery based upon such accidents with a direct cause of action against Taylor-Wharton. Under Alabama law, where there is an express assumption provision in a purchase agreement, a transferee of all assets of the seller's company is deemed liable for the transferor's torts. See, e.g., Prattville Memorial Chapter v. Parker, 10 So. 3d 546, 555 (Ala. 2008); Brown v. Economy Baler Co., 599 So. 2d 1, 3 (Ala. 1992). Delaware corporate law

mirrors Alabama law in this respect.  See Rohn Indus., Inc. v. Platinum Equity LLC, 887 A.2d 983, 996 (Del. Super. 2005).  Therefore, upon closing, Taylor-Wharton effectively assumed any liability owing to any claimants on account of the aforementioned accidents, including the Blasingame Plaintiffs.

In their opposition, the Debtors cite to In re Philadelphia Newspapers, LLC, 424 B.R. 178 (Bankr. E.D. Pa. 2010) for the proposition that the Assumption of Liability Provision remained as an ongoing obligation on the part of Taylor-Wharton and was therefore subject to rejection. In that case, however, the bankruptcy court actually found that the reimbursement provision pursuant to which the debtor agreed to reimburse the seller for certain workers' compensation claims—not the actual assumption provision pursuant to which the debtor assumed direct liability for such claims—was executory.  Id. at 181-82.

Here, the issue before the Court is not whether the Debtors still have an ongoing obligation to indemnity Harsco, but whether the Debtors' assumption of certain liabilities to, inter alia, the Blasingame Plaintiffs is an ongoing obligation.  The Court finds that it is not because Taylor-Wharton's assumption was complete upon the closing of the Purchase Agreement, pursuant to which applicable state law attached making Taylor-Wharton liable for Harsco's torts.  Thus, the enforceability of the Assumption of Liability Provision is not affected by the Debtors' rejection of the Purchase Agreement.  The Blasingame Plaintiffs' claims against the Debtors accrued prepetition, after the Debtors had already assumed liability for such claims. The fact that the Blasingame Plaintiffs' claims had not yet been liquidated prior to the Petition Date neither vitiates their claims against the Debtors nor eliminates the Debtors' assumption of liability for such claims.

Finally, the Court finds that the Debtors' opposition to the Blasingame Plaintiffs' pursuit of their claims in the Alabama is inconsistent with the Confirmation Order confirming the Debtors' Plan.  Prior to confirmation, the Blasingame Plaintiffs appeared before the Court and objected to the Plan to the extent that it would bar them from pursuing their claims against the Debtors.  The incorporation of Paragraph 16(b) of the Confirmation Order was intended by the Debtors to allay any concerns of the Blasingame Plaintiffs that the Plan would bar their claims, and it was as a result of this added provision that the Blasingame Plaintiffs withdrew their objection to Plan confirmation.  Therefore, the Court concludes that the Debtors are precluded from opposing the Blasingame Plaintiffs' pursuit of their claims as permitted under the Confirmation Order and the Plan.

Accordingly, the Court concludes that the Debtors' Complaint fails to state a claim upon which relief may be granted.  First, the Debtors' reliance on the Rejection Order for relief from Section 2.4 of the Purchase Agreement is misguided because this provision had been fully performed and thus was not executory.  Second, the Debtors' allegation that the Blasingame Plaintiffs may rely only upon Section 2.4 to establish the Debtors' liability disregards applicable state law.  Therefore, dismissal of the Complaint is appropriate and warranted.

## V. **CONCLUSION**

For the foregoing reasons, the Court will grant the Motions and dismiss the Debtors' Complaint with prejudice.  An appropriate Order follows.

BY THE COURT:

Dated:     Wilmington, Delaware
           November 23, 2010

Brendan Linehan Shannon
United States Bankruptcy Judge